IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BILL D. CARR,

     Plaintiff,

                                       6:13-cv-00521-PK

                                       OPINION AND

v.                                   ORDER

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

     Defendant.

PAPAK, Magistrate Judge:

     Plaintiff Bill D. Carr filed this action on March 26, 2013, seeking judicial review of the

Commissioner of Social Security's ("Commissioner") final decision denying his applications for

disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II

and XVI of the Social Security Act ("the Act").  This court has jurisdiction over Carr's action

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  All parties have consented to a Magistrate

Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).  I have

considered the parties' briefs and all of the evidence in the administrative record.  For the reasons

set forth below, this case is remanded for further administrative proceedings.

## DISABILTY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected . . . to last for a continuous period of not

less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step

sequential process for determining whether a claimant has made the requisite demonstration.  *See*

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  At the first four steps of the process, the burden of proof is on the claimant; only

at the fifth and final step does the burden of proof shift to the Commissioner.  *See Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge ("ALJ") considers the claimant's work

activity, if any.  *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the

claimant will be found not disabled.  *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§

404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).  Otherwise, the evaluation will

proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments.

*See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An

impairment is "severe" if it significantly limits the claimant's ability to perform basic work

activities and is expected to persist for a period of twelve months or longer.  *See Bowen*, 482

U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The ability to perform basic work

activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* SSR 85-28, 1985 WL 56856, at *3 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a

regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD

### I.    Procedural Background

Carr[2] protectively filed for DIB and SSI under Titles II and XVI of the Act on April 9, 2009, asserting a disability onset date of April 30, 1998, which was later amended to December 20, 2003, at Carr's request. Tr. 23, 42.[3]  Both claims were initially denied on September 23, 2009, and again on reconsideration on February 8, 2010. Tr. 74, 85.  On February 16, 2010, Carr requested a hearing before an ALJ, which was held, via video teleconference, on June 9, 2011. Tr. 90, 38-65.  Carr was represented by legal counsel. Tr. 23.  The ALJ issued a decision on August 19, 2011, finding Carr not disabled. Tr. 20-32.  Carr then obtained additional medical evidence of his disability, which he submitted for review to the Appeals Council. Tr. 634, 19. On February 23, 2013, the Appeals Council denied Carr's request for review. Tr. 1-3.  Carr now appeals to this court.

### II.    ALJ's Findings

At step one of the sequential process outlined above, the ALJ found that Carr had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 25.  At step two, the ALJ determined that Carr had the following severe physical and mental impairments: degenerative disc disease of the lumbar spine, complex partial seizure disorder, left shoulder pain with a possible rotator cuff tear, and major depressive disorder.[4]  Tr. 25.  At step three, the ALJ concluded that Carr's impairments, alone or in combination, did not meet or equal a listed impairment for DIB or SSI purposes. Tr. 26.  The ALJ then assessed Carr's RFC. She

---

[2] Carr was born on March 12, 1951.
[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 4.
[4] The ALJ found that Carr's diabetes mellitus, hearing loss, and cellulitis of the left leg were non-severe impairments. Tr. 26.  Carr does not dispute these findings.

concluded that Carr had the capacity to perform medium, unskilled work with the following

limitations: (1) he should avoid unprotected heights, moving machinery, and commercial

driving; (2) he should only occasionally interact with co-workers or reach with his left arm to or

above shoulder height; and (3) he should have no public interaction. Tr. 28. At step four, the

ALJ concluded that Carr was unable to perform any past relevant work, but at step five she found

that a person with Carr's limitations could perform jobs existing in significant numbers in the

national economy. Tr. 30-31. The ALJ therefore found Carr not disabled within the meaning of

the Act. Tr. 32.

## DISCUSSION

Carr argues that the ALJ erred in assessing his RFC by improperly evaluating his

testimony and the opinions of his treating psychologist and physician and ignoring a finding by

the Oregon Office of Vocational Rehabilitation Services ("OVRS"). Pl.'s Opening Br. 24, 26,

17. He also argues that the ALJ inappropriately directed the vocational expert to testify to the

number of unskilled, medium jobs that exist in the national economy. Pl.'s Opening Br. 28-30.

Furthermore, he assigns error to the ALJ's step-five determination that a significant number of

jobs exist in the national economy that a person with Carr's limitations could perform. Pl.'s

Opening Br. 31. Lastly, he asserts, and the Commissioner now concedes, that the Appeals

Council improperly rejected new evidence and denied review of his case. Pl.'s Opening Br. 20-

25; Def.'s Br. 6.

For the reasons discussed below, I find that Carr is not entitled to benefits based on all of

the evidence now in the administrative record. I agree with the parties, however, that the

Appeals Council erred in rejecting the new evidence and denying review of Carr's case.

Consistent with the Commissioner's request, as discussed below, I find it appropriate to remand

this matter to the Administration for the purpose of reevaluating the record in light of this new evidence. While I address and reject Carr's other potentially dispositive assignments of error in this opinion, upon remand the Administration must reevaluate all of the evidence in support of Carr's asserted impairments.

## I.    ALJ's Alleged Errors

### A.    Carr's Credibility

Carr contends that the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for finding his testimony concerning the extent and severity of his impairments not credible. When a claimant has produced objective medical evidence that could reasonably be expected to cause the alleged symptoms, and there is no affirmative evidence of malingering, "the ALJ may reject the claimant's testimony regarding the severity of [the claimant's] symptoms only if he [or she] makes specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1284, *citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). A general assertion that the claimant is not credible is insufficient. *See Smolen*, 80 F.3d at 1284. Furthermore, the ALJ's decision to discredit the claimant's testimony must be based on substantial evidence. *See Reddick*, 157 F.3d at 720, *citing Smolen*, 80 F.3d at 1279. If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002), *citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

At his hearing, Carr testified that his back and shoulder problems, seizure disorder, and depression resulted in physical and mental limitations that prevented him from engaging in

substantial gainful activity.  Carr explained that his back and shoulder pain frequently prevented him from vacuuming and completely prevented him from mowing the lawn or shoveling.  Tr. 49. He also testified that he had trouble picking items up off the floor, holding small items, reaching at or above shoulder height with his left arm, repeatedly lifting items at waist level, and bending and squatting.  Tr. 46, 47, 49.  Carr further reported that he experienced pain walking more than fifty yards on a mild uphill grade or seventy-five to one hundred yards on a flat grade and sometimes experienced pain from sitting more than forty minutes or standing for any length of time.  Tr. 48.  Because of his depression, Carr stated that he had a lack of interest and energy and easily became frustrated and angry.  Tr. 53.  He also testified that he had trouble getting along with others due to mood swings and occasionally lost focus due to attention deficit issues.  Tr. 53, 57.  Finally, Carr claimed to experience side effects from his seizure medication, including restlessness and the inability to determine when he was satiated or dehydrated.  Tr. 51.  Carr estimated that, on average, the combined effects of his disabilities limited his overall productivity to one to one-and-a-half hours, five days a week.  Tr. 54.

The ALJ found that Carr's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the medical record and Carr's daily activities.  Tr. 29.  The ALJ found Carr's testimony inconsistent with the following evidence: (1) a May 2, 2009 physical examination in which Dr. Amy Cowan observed that Carr could walk and bend without any difficulty and had 5/5 motor strength in his upper and lower extremities, Tr. 29, 276-280; (2) the opinion of Dr. Paul Stoltzfus, who performed a mental status examination on Carr on September 13, 2009, and concluded that Carr was mildly depressed but did not have a major depressive

disorder, did not appear to be in any pain or discomfort, was able to pay attention and

concentrate during his interview, and recalled 3/3 items immediately and 2/3 items after five

minutes, Tr. 29, 387; (3) Carr's own statement to his treating psychologist, Dr. David Freed,

during a treatment session on June 29, 2010, that he discontinued using his antidepressant

medication because he was, at the time, feeling "ok," Tr. 29-30, 582; (4) an October 20, 2010

brain magnetic resonance imaging ("MRI") that "proved unremarkable," Tr. 29, 438; (5) a

February 17, 2011 electroencephalography that "was normal," Tr. 29, 455; (6) the absence of

medical records showing that Carr had "undergone any actual treatment for his impairments," Tr.

30; (7) the absence of medical records to corroborate his allegations of experiencing side effects

from his medication, Tr. 30; and (8) Carr's hearing testimony that he was able to maintain a small

garden, do laundry, sweep, shop, occasionally cook, wash dishes, and lift a case of twenty-four

soda cans into a shopping cart, Tr. 30, 46-50.

Carr's limitation testimony was contradicted by substantial medical evidence in the record

and by his own account of his daily activities. The ALJ identified these contradictions in her

decision, providing clear and convincing reasons, supported by substantial evidence, for

discrediting Carr's testimony. The ALJ's credibility finding is therefore sustained.

**B.   Weight Accorded to Treating Doctor's Opinion**

Carr next contends that the ALJ improperly accorded little weight to the opinion of Dr.

Freed, his treating psychologist. In weighing the medical evidence in the record, the

Commissioner generally affords enhanced weight to treating doctors' opinions. *See* 20 C.F.R. §

404.1527(d)(2). Indeed, where these opinions are well supported by diagnostic techniques and

are not inconsistent with other medical evidence in the record, treating doctors' opinions are

accorded controlling weight. *See id.* Even where a treating doctor's opinion is contradicted by

competent medical evidence, it is still entitled to deference. *See id.*; *see also, e.g., Orn v. Astrue*, 495 F.3d 625, 631-632 (9th Cir. 2007) (treating doctor's opinion contradicted by medical evidence in the record "still entitled to deference"), *quoting* SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996).

The ALJ may reject a treating doctor's opinion because it is contradicted by an examining doctor's opinion if the ALJ provides specific and legitimate reasons for doing so. *See, e.g., Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009), *quoting Thomas*, 278 F.3d at 957; *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001), *citing Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). These reasons must be supported by substantial evidence in the record. *See Valentine*, 574 F.3d at 692, *quoting Thomas*, 278 F.3d at 957. To meet this burden, the ALJ may provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751, *citing Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (affirming "the long-settled rule that we will not set aside the denial of a disability claim unless 'the Secretary's findings are not supported by substantial evidence *in the record as a whole*'"), *quoting Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985).

In this case, the ALJ accorded little weight to Dr. Freed's opinion because "the objective medical evidence of record fails to support it." Tr. 30. On a medical source statement dated May 18, 2011, Dr. Freed stated that Carr had experienced four or more episodes of decompensation in the past year. Tr. 616. The ALJ, however, found that "[t]he medical record does not contain instances of repeated decompensation." Tr. 27. Dr. Freed further opined that, to work on a regular and continuing basis, Carr would need frequent breaks of variable length,

more than four hours of rest during each eight-hour workday, and could be expected to miss at least four days of work per month due to "both physical and psychological limitations," including back, neck, and shoulder pain, mental illness, and his seizure disorder. Tr. 614-617. The ALJ cited three pieces of evidence in the record that contradicted Dr. Freed's opinion: (1) Dr. Stoltzfus's September 2009 opinion that Carr did not have a major depressive disorder or severe limitations of memory or concentration, Tr. 29, 387; (2) Carr's June 2010 statement to Dr. Freed that he was feeling "ok," Tr. 29-30, 582; and, to the extent that Dr. Freed's opinion was based on his assessment of Carr's physical limitations, (3) Dr. Cowan's May 2009 opinion that Carr's physical strength and mobility were not severely impaired, Tr. 29, 276-280.

Dr. Freed's opinion was contradicted by medical evidence in the record. The ALJ was therefore not required to accord it controlling weight. *See, e.g., Valentine*, 574 F.3d at 692; *Holohan*, 246 F.3d at 1202, *citing Lester*, 81 F.3d at 830. It was within the ALJ's discretion to accord greater weight to the opinions of Drs. Stoltzfus and Cowan and to credit Carr's statement concerning his discontinued used of medication. Because the ALJ provided specific and legitimate reasons for according little weight to Dr. Freed's opinion, the ALJ's treatment of Dr. Freed's opinion provides no grounds for disturbing the Commissioner's final decision.

## C.    Other Assignments of Error

Carr also asserts that the ALJ should have accorded greater weight to the opinion of his treating physician, Dr. David Edmonds, should have considered the OVRS's disability finding, should not have proposed a hypothetical that directed the vocational expert to assess the number of unskilled, medium jobs in the national economy, and should not have considered the vocational expert's testimony on the number of jobs that a person with Carr's limitations could perform in Oregon as dispositive of whether a significant number of jobs existed within the

national economy. Pl.'s Opening Br. 17, 28, 31. Even if I were to agree with Carr on these issues and find in addition that these errors were not harmless, a direct award of benefits would not be merited in the instant case. Because I remand this case for the reasons set forth below and direct the ALJ to reconsider all of evidence in the record in light of the results of Carr's September 2011 MRI, it is unnecessary to address Carr's remaining claims that the ALJ erred.

## II.   New Evidence

The Appeals Council must consider new evidence submitted by the claimant when that evidence is material and the claimant had good cause for failing to incorporate it into the record. 42 U.S.C. § 405(g); *see also Mayes v. Massanari*, 276 F.3d 453, 461-462 (9th Cir. 2001). "[E]vidence is sufficiently material . . . 'only where there is a *reasonable possibility* that the new evidence would have changed the outcome of the Secretary's determination had it been before him.'" *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984), *quoting Dorsey v. Heckler*, 702 F.2d 597, 604-605 (5th Cir. 1983); *see also Mayes*, 276 F.3d at 462 ("*Booz* governs the materiality inquiry."). The new evidence must have a "'direct[] and substantial[]'" bearing on the disputed issue. *Mayes*, 276 F.3d at 462, *quoting Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982). To establish good cause, the claimant must show that the new evidence was unavailable and could not have been obtained prior to the hearing before the ALJ. *Id.* at 463, *citing Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). The claimant cannot "meet the good cause requirement simply by obtaining a more favorable report from an expert witness once his claim is denied. The claimant must establish good cause for not seeking the expert's opinion prior to the denial of his claim." *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990) (citation omitted); *see also Mayes*, 276 F.3d at 462 ("*Clem* governs the good cause inquiry.").

Carr's September 15, 2011 MRI, which he submitted to the Appeals Council as new evidence, satisfies both requirements. It is material to determining properly the extent of his impairment. The ALJ found that Carr's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible" and there was "[o]bjective medical evidence inconsistent with [Carr's] allegations of disability." Tr. 29. Among other medical evidence presented in the record, Carr's April 2001 MRI showed disc desiccation at L5-S1. Tr. 305. Carr's September 2011 MRI, however, showed that his back condition had deteriorated; L5-S1 was now herniated. Tr. 678. Evidence of a more severe condition bears directly and substantially on a proper assessment of the degree to which Carr's impairments limit his ability to work. At the time of her decision, the ALJ did not have the opportunity to evaluate the administrative record in consideration of this new, objective medical evidence.

Carr also had good cause for not including the results of his September 2011 MRI in his medical record. At the time of his hearing, Carr had not undergone the MRI study. And there is no evidence that Carr "simply . . . obtain[ed] a more favorable report from an expert witness once his claim [was] denied." *Clem*, 894 F.2d at 332. To the contrary, Carr underwent the September 2011 MRI when he visited the emergency room for an unrelated injury and was "in so much pain that he [was] unable to sit and [had] to be examined standing up." Tr. 632. Moreover, Dr. Edmonds's notes from September 1, 2011, indicate that he had previously requested that Carr receive an MRI, but this request had been denied. Tr. 670.

The Commissioner concedes that the ALJ should reevaluate Carr's medical record in light of his September 2011 MRI results. Because this evidence is material and Carr had good reason for not previously including it in the medical record, I find that the Appeals Council erred in rejecting this evidence and denying review of Carr's applications for DIB and SSI.

### III.    Remand for Further Administrative Proceedings

Upon a claimant's successful appeal of the Commissioner's final decision, this court has discretion to remand an administrative action for corrective proceedings, or to reverse or modify the Commissioner's final decision without further proceedings. *See* 42 U.S.C. § 405(g); *see also Harman v. Apfel*, 211 F.3d 1172, 1177-1178 (9th Cir. 2000). This court may remand for an immediate award of benefits only when the record before it clearly shows that the claimant "is, in fact, disabled." *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). This decision turns on the utility of further proceedings. *Id.*, *quoting Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Further administrative proceedings serve no useful purpose where the record has been fully developed and the following three criteria have been met:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.*, *quoting Benecke*, 379 F.3d at 593. When these criteria are satisfied, the proper course is to "remand for an immediate award of benefits." *Id.*, *quoting Benecke*, 379 F.3d at 593. More typically, though, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke*, 379 F.3d at 593, *quoting INS v. Ventura*, 537 U.S. 12, 16 (2002).

Carr argues that his September 2011 MRI is sufficient evidence of impairment such that the Commissioner would now be required to find him disabled. I find this argument unpersuasive. The MRI does not clearly establish that Carr's degenerative disc disease, either alone or in combination with his other impairments, meets or equals the severity of one of the listed impairments. *See* 20 C.F.R. § 404, subpt. P, app. 1, § 1.04 (defining criteria for listed disorders of the spine).

Page 15 – OPINION AND ORDER

Moreover, Carr has not convincingly argued that, in light of this new evidence, "there are no outstanding issues that must be resolved before a determination of disability can be made." *Strauss*, 635 F.3d at 1138, *quoting Benecke*, 379 F.3d at 593. Instead, it remains unresolved how severely, and in what ways, Carr's disabilities limit his capacity to work. In her decision based upon the evidence then in the record, the ALJ discredited Carr's testimony and accorded little weight to the opinions of Drs. Freed and Edmonds, both of whom opined that Carr had substantial work limitations. Based on the new evidence Carr submitted to the Appeals Council, it is necessary for the ALJ to reevaluate the extent and severity of Carr's impairments and reassess his RFC. Specifically, in light of the September 2011 MRI, the ALJ must reconsider the credibility of Carr's testimony and reconsider the weight accorded to each of the expert medical opinions in the record[5] and the weight, if any, accorded to the OVRS's finding. *See Elstun v. Comm'r Soc. Sec. Admin.*, No. 6:12-cv-01811-MA, 2013 WL 5573014, at *8 (D. Or. Oct. 9, 2013) ("The ALJ clearly erred in considering the [OVRS's] disability determination because she failed to explain the consideration it was given."); *see also* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."); *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (holding that where there is a marked similarity between two federal disability programs, the ALJ must accord great weight to other agency's disability determination). The court cannot determine whether Carr's new MRI makes his limitation testimony credible or whether Drs. Freed and Edmonds's opinions and the OVRS's disability finding now deserve more weight. This determination is appropriately left to the Administration. *See* 42 U.S.C. § 405(g); *see also Connett*, 340 F.3d at 874.

---

[5] This includes reconsideration of Dr. Freed's opinions to the extent that his opinions concerning Carr's mental impairments are related to his assessment of Carr's physical impairments.

## CONCLUSION

For the reasons set forth above, this action is remanded to the Administration for further proceedings. The Administration should evaluate Carr's September 15, 2011 MRI, and reevaluate all the evidence in the record in light of the new evidence, consistent with this opinion.

IT IS SO ORDERED.

DATED this 10th day of July, 2014.

Paul Papak
United States Magistrate Judge